UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL BOONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-CV-2296 |
| | ) | |
| FABIENNE WITHERSPOON and PAUL TALBOT, | ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH**, **U.S. DISTRICT JUDGE**.

Plaintiff proceeds pro se from his incarceration in Shawnee Correctional Center on claims for deliberate indifference to his type 2 diabetes and neuropathy during the last part of his incarceration in Danville Correctional Center before his transfer to Shawnee.

The parties have filed cross summary judgment motions. While Plaintiff appears to have received good care for most of his stay at Danville and a jury certainly could find for Defendants, the Court cannot rule out an inference of deliberate indifference regarding Plaintiff's neuropathy or the unexplained halving of one of

Plaintiff's diabetes medicines for about four months. Summary judgment is denied.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

## Facts

Plaintiff was diagnosed with type 2 diabetes some time before 2005. Defendant Dr. Talbot, a doctor working at Danville Correctional Center, treated Plaintiff starting in 2010 until Plaintiff transferred from Danville to Shawnee Correctional Center in August 2013. Over these years, Dr. Talbot prescribed diabetes medications, lifestyle instruction, lab tests, daily checks of Plaintiff's blood sugar levels, and a diabetic meal tray. Dr. Talbot also offered to prescribe insulin to Plaintiff, but Plaintiff preferred to control his diabetes through oral medication and lifestyle changes. Plaintiff's A1C level, a blood test that tracks average blood sugar levels, varied from 6.3 to 8.1 from 2005 to 2009. An A1C of 7 or less is generally considered to indicate well controlled diabetes, though many factors are taken into account in determining whether a particular patient's diabetes is well controlled.

Plaintiff was prescribed two diabetes medicines during his incarceration in Danville—Glipizide and Metformin. The dosages of these medicines were revised from time to time based upon Dr. Talbot's determination of how well Plaintiff's diabetes was controlled. The medical treatment Plaintiff challenges began in the

Fall of 2012 through August 22, 2013, when Plaintiff was transferred from Danville to Shawnee.

In August 2012, Plaintiff was taking 15 mg of Glipizide, twice per day, and 1000 mg Metformin, twice per day. Plaintiff's A1C that month was 7.6. By November Plaintiff's A1C had increased to 7.8. On December 4, 2012, Dr. Talbot talked to Plaintiff about trying insulin, but Plaintiff preferred to stay with the oral medicine/lifestyle modification approach. Dr. Talbot reduced the Metformin to 850 mg and planned to follow up with Plaintiff in six weeks.

On December 13, 2012, Plaintiff saw Defendant Nurse Practitioner Witherspoon in the diabetes clinic. Defendant Witherspoon continued Dr. Talbot's Metformin prescription but reduced Plaintiff's Glipizide to 15 mg once a day rather than twice a day. Defendant Witherspoon does not recall why she halved the Glipizide prescription. She avers that "[i]t is possible that I was under the impression that [Plaintiff] was only receiving Glipizide 15 mg once a day, and simply did not realize that he was receiving Glipizide twice a day. It is also possible that I decreased the

Plaintiff's Glipizide. (Witherspoon Aff. ¶ 7.) Dr. Talbot did not catch the decrease in his review of the records.

By April 2013, Plaintiff's A1C had increased to 11.1. Dr. Talbot does not believe that the 15 mg daily decrease in Glipizide would account for the A1C raise, noting that Plaintiff had gained weight and had purchased food from the commissary that is contraindicated for diabetes. Dr. Talbot restored Plaintiff's Glipizide prescription to 15 mg, twice per day, and continued Plaintiff's other prescriptions. By August 14, 2013, Plaintiff A1C had dropped to 8.

In November of 2012, Plaintiff began complaining of symptoms consistent with foot neuropathy—a sharp and tingling foot pain. According to Plaintiff, he continued to complain to both Defendants about these increasing symptoms to no avail until, on July 10, 2013, Defendant Witherspoon diagnosed neuropathy and prescribed 300 mg of Neurontin, twice daily. Plaintiff believed the dosage needed to be increased because he felt no relief and his hand had started tingling. About a month later, on August 9, 2013, Defendant Witherspoon changed her diagnosis from neuropathy to plantar fasciitis and discontinued the Neurontin. Plaintiff transferred to Shawnee on August 22, 2013.

## Analysis

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. Townsend v. Cooper, 759 F.3d 678, 689 (7th Cir. 2014). No one disputes that type 2 diabetes, neuropathy, or plantar fasciitis are serious medical needs, so the focus is on deliberate indifference.

Deliberate indifference is the conscious disregard of a known and substantial risk of serious harm to an inmate's health. Townsend, 759 F.3d at 689; Rice ex rel. Rice v. Correctional Medical Serv., 675 F.3d 650, 665 (7th Cir. 2012)("An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it."). An inference of deliberate indifference arises "'if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)(*quoting* Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009). A mistake is not deliberate indifference. Whiting v. Wexford Health Sources, Inc.,

839 F.3d 658, 662 (7th Cir. 2016)([W]ithout more, a mistake in professional judgment cannot be deliberate indifference." ).

Defendants dispute that Plaintiff complained of his foot pain as often as he says, but at this stage Plaintiff's version is accepted. Defendants do not adequately explain why no action was taken on Plaintiff's complaints for eight months nor why the Neurontin prescription was abruptly terminated in favor of a diagnosis of plantar fasciitis. Defendants have not met their burden of demonstrating the absence of a disputed fact on this issue.

The reduction in Glipizide is a more difficult question. The reduction appears to be no more than a mistake on this record, corrected quickly when discovered four months later. Additionally, Plaintiff bears some of the responsibility because he gained weight during this time, which affects glucose control, and Plaintiff's choices during this time regarding diet and exercise would have also affected his glucose control. Whether Plaintiff can show that the four month decrease of 15 mg in Glipizide per day caused him harm is questionable. However, whether Defendants were deliberately indifferent on this claim requires determining their

subjective knowledge and intent, a decision that the Court concludes belongs to the jury on this record.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's "motion for order pursuant to Rule 56" is denied. (d/e 105.)  Plaintiff challenges to Defendants' exhibits were considered.

2. Plaintiff's motion to exceed page and type limitations is granted.  (d/e 108.)

3. Plaintiff's renewed motion for counsel is denied (d/e 113) for the reasons stated in the prior orders denying counsel.  Additionally, the record demonstrates that Plaintiff's pleadings are quite thorough and well written, demonstrating a solid knowledge of applicable law and civil procedure.  Further, before prison Plaintiff completed his first year of college and successfully completed trade school to become a technician. (Pl.'s Dep. 14.)

4. Plaintiff's motion for partial summary judgment is denied. (d/e 91.)

5. Defendants' motion for summary judgment is denied. (d/e 101.)

6. This case is referred to the Magistrate Judge for a settlement conference.  Final pretrial and trial dates will be set if no settlement is reached.

ENTERED:  September 5, 2017

FOR THE COURT:

s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE